UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS BOYLE,<br><br>Defendant. | No. 2:16-cr-00048-KJM<br><br><br>ORDER |

Defendant, initially proceeding pro se, moves for an order granting a reduction of his sentence to time served under 18 U.S.C. § 3582(c). Mot., ECF No. 74. The government opposes. Opp'n, ECF No. 75. Defendant was appointed counsel, who filed supplemental briefing on his behalf. Def.'s Suppl. Br., ECF No. 81. The government filed a supplemental opposition. Suppl. Opp'n, ECF No. 85. Defendant filed a reply. Suppl. Reply, ECF No. 87. Defendant makes this motion in light of the increased risks to health that the coronavirus ("COVID-19") poses to incarcerated persons and to him in particular. For the following reasons, the court DENIES defendant's motion.

I.  BACKGROUND

On March 22, 2017, defendant Dennis Boyle pled guilty to distribution of child pornography under 18 U.S.C. § 2252(a)(2). ECF No. 46. On September 20, 2017, the undersigned sentenced him to a term of imprisonment of 84 months, with 240 months of

supervised release and a restitution payment of $28,346.80.  Sent. Mins., ECF No. 68.  The vast majority of the conduct underlying the offense took place at defendant's home via the internet.  Opp'n, ECF No. 3–4 (citing PSR ¶¶ 5–16, ECF No. 61).

Defendant also was indicted in the District of Wyoming on related conduct that was not the basis of the case before this court; there he pled guilty to two counts of sexual exploitation of children under 18 U.S.C. § 2251(a) and (e), for which he received a sentence of 164 months on each count with lifetime supervised release.  Opp'n at 4, ECF No. 75; *see United States v. Boyle*, 2:18-CR-00005 (D. Wyo. 2018).  All sentences were to be served concurrently, for a total of 164 months.  Defendant has served 39 months thus far, which is less than one quarter of his total sentence.  Opp'n at 4.

Defendant is housed at Federal Medical Center Fort Worth ("FMC Ft. Worth").  Mot. at 3.  The Bureau of Prisons ("BOP") currently reports 0 active inmate cases of COVID-19, 10 staff active cases, 12 inmate deaths and 616 inmates recovered at FMC Ft. Worth at the time of this writing.  *See* Bureau of Prisons (BOP), *COVID-19 Cases* (updated daily) (last accessed Oct. 8, 2020).[1]

Defendant asserts he has medical conditions that make him particularly vulnerable to serious harm from COVID-19.  Specifically, he states he has hypertension, atrial fibrillation and severe sleep apnea.  Mot. at 5–6.  Following the appointment of counsel, defendant supplemented the record with medical records confirming these conditions.  Def.'s Suppl. Br. Ex. 1, ECF No. 81-1.  BOP also notified him he had tested positive for COVID-19 on May 1, 2020.  *Id.* at 7.  On May 3, 2020, he was sent to the hospital emergency room, "treated and tested for COVID-19 symptoms," stabilized, and sent back to FMC Fort Worth.  *Id*.  His supplemental briefing asserts that despite being marked "recovered," he continues to be short of breath.  Def.'s Suppl. Br. at 6–7.

/////

/////

---

[1] https://www.bop.gov/coronavirus/

2

Prior to his hospital visit for COVID-19 infection, defendant wrote the warden of FMC Ft. Worth on April 18, 2020, requesting a reduction in sentence under 18 U.S.C. § 3582. Mot. at 16.[2] The warden replied, denying his request on April 30, 2020. *Id.* at 20.

## II. LEGAL STANDARD

The district court that imposed sentence on a criminal defendant has authority to modify the term of imprisonment under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). That statute provides, in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that […]extraordinary and compelling reasons warrant such a reduction […] and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. §§ 3582(c)(1)(A), 3582(c)(1)(A)(i).

If the defendant has exhausted administrative remedies, the analysis is twofold. First, the court must consider the same factors applicable at the original sentencing, enumerated in 18 U.S.C. § 3553(a), to the extent they remain applicable at the time the motion is brought. 18 U.S.C. § 3582(c)(1)(A). Second, the court must find "extraordinary and compelling reasons" to release a defendant from BOP custody in a policy statement. *Id.*

The statute further requires "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A). In 2006, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody, which was last amended November 1, 2018. *See* U.S.S.G. § 1B1.13. Since passage in December 2018 of the First Step

---

[2] Defendant did not label exhibits in his motion. His request is attached to his motion at 16 in ECF pagination; the warden's reply is at 20 in ECF pagination.

Act (FSA),[3] which amended § 3582 to allow a defendant to file a motion for compassionate release directly with the court, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding.  As this court previously has observed, a number of district courts nationwide have determined that the policy statement provision "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because the statement has not been amended since the First Step Act passed to reflect that both defendants and the BOP may move for compassionate release.  *See United States v. Allen*, No. 2:17-CR-0229, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)).

Many courts in this circuit have nonetheless "turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence."  *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020).  However, there is also a strong contingent of cases in which the presiding judge has concluded the guidelines are no longer limiting, and the court has discretion to define what constitutes an "extraordinary and compelling" reason.  *See, e.g.*, *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681–82 (N.D. Cal. 2019) ("This court follows the growing number of

---

[3] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

district courts that have concluded that, in the absence of applicable policy statements, courts can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31, 2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding U.S.S.G. § 1B1.13 is no longer limiting but considering the policy statement as guidance).

In resolving the instant motion, this court continues to consider the Sentencing Commission's policy statement as guidance, without determining whether it is binding in this context.  The court notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons," section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the safety of any other person or to the community."  *United States v. Numann*, No. 3:16-CR-00025-TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

III.     DISCUSSION

Since the appointment of counsel, as noted, defendant supplemented the record with medical records supporting the severity of his medical conditions.  Assuming without deciding that defendant's asserted health condition, the import of his positive test for COVID-19, and the circumstances at FMC Ft. Worth weigh in his favor, separately or in combination, defendant has not met his burden to show he is not a danger to the community.

The government argues defendant remains a danger to the community.  Opp'n at 6-7, ECF No. 75.  In considering dangerousness, the court is guided by the sentencing factor focused on "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).  It also bears in mind the Sentencing Guidelines policy statement referenced above.

Several district courts who have analyzed similar motions in the midst of the COVID-19 pandemic have concluded that a defendant who has suffered the same conviction as defendant's should not be released to home confinement, where there is a risk he will reoffend.

*See, e.g.*, *United States v. Feiling*, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography in part because defendant committed offense while at home, "meaning a term of home confinement would be less likely to protect the public"); *United States v. Miezin*, No. 1:13CR15, 2020 WL 1985042, at *5 (N.D. Ohio Apr. 27, 2020) (denying motion for compassionate release of defendant convicted of receipt and distribution of child pornography, in part because "[i]n today's society with smartphones, tablets, laptops, smart TVs, and countless other devices, it would not be possible to place [defendant] in home confinement and eliminate his ability to engage in his prior criminal conduct."); *United States v. Hylander*, No. 18-CR-60017, 2020 WL 1915950, at *3 (S.D. Fla. Apr. 20, 2020) (denying motion for compassionate release of defendant convicted of possession of child pornography because "defendant proposes to be released to the home with his wife and brother-in-law, which is precisely the location in which the offense for which he was convicted was committed, and presents a concern that Defendant will reoffend."); *cf. United States v. Fischman*, No. 16-CR-00246-HSG-1, 2020 WL 2097615, at *3 (N.D. Cal. May 1, 2020) (granting motion for compassionate release by defendant convicted of possession of child pornography where defendant had served majority of his sentence, taken steps towards rehabilitation while in prison, and was scheduled to be moved to a halfway house in a few months).

      Here, defendant asserts he has been a model prisoner, with a work assignment and several productive activities while in prison, including membership in the prison suicide watch program and participation in religious studies, hobbies and self-improvement. Mot. at 5. While commendable, these activities do not sufficiently mitigate the fact that defendant, as in similar cases, proposes to be returned to the same environment in which he committed his prior offenses. He has offered a fairly detailed release plan addressing the stability of his home environment and his access to mental health services. *See generally* Def.'s Suppl. Br., Ex. 2, ECF No. 81-2. He asserts "strict conditions prohibiting unmonitored computer use" will prevent recidivism. Def. Suppl. Br. at 10, ECF No. 81. Not only did defendant commit his crime at his computer at the same home to which he proposes release, once he became aware he was being investigated, his

wife colluded with him to destroy evidence. PSR ¶¶ 8–9. Defendant argues the "strict conditions [of release] prohibiting unmonitored computer use" he would agree to "may be enforced by the Probation Office remotely." Def.'s Suppl. Br. at 10. His plan does not address the serious questions raised by his prior conduct, and that of his wife, and the apparent significant potential for recidivism. Indeed, short of removing all connected devices from the home, including those owned by his wife, which defendant does not propose, it is not clear any condition could be imposed that would reliably safeguard the community.

Setting aside the other factors relevant to release under the compassionate release statute, defendant has not met his burden of showing he would not be a danger to the community if he was released. Therefore, on this basis alone the court DENIES defendant's motion.

IV. CONCLUSION

For the foregoing reasons, the court DENIES defendant's motion for release under 18 U.S.C. § 3582.

IT IS SO ORDERED.

DATED: October 13, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE